**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Benjamin Thomas TISDALE, III and Tim**
**Bryan Tisdale, Defendants-Appellants.**

Nos. 78–1988, 78–1989.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 26, 1979.

Decided March 24, 1981.

Rehearing Denied in No. 78–1989
June 1, 1981.

R. Raymond Twohig, Jr., Asst. Federal Public Defender, Albuquerque, N. M., for defendant-appellant Benjamin Thomas Tisdale, III.

Anthony F. Renzo, Denver, Colo., for defendant-appellant Tim Bryan Tisdale.

Richard J. Smith, Asst. U. S. Atty. (R. E. Thompson, U. S. Atty., Albuquerque, N. M., with him on brief), for plaintiff-appellee.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and BROWN, District Judge *.

SETH, Chief Judge.

These two cases were consolidated for argument and disposition. The two defendants were charged and convicted by a jury on two counts for the interstate transportation of stolen property and the sale of stolen goods. The item of property on which the charge was based was an antique silver tea set which was stolen in Denver City, Texas and sold to an undercover agent in Albuquerque. The tea set was unique, had enamel work on it, was made in Russia by a silversmith whose name appeared thereon and whose work was recognized by antique dealers. The basic issue concerns the admission into evidence over defendants' objection of a tape recording of a meeting at which both defendants were present, an informer, and a Bob Scott. The objection to this tape was based on the statements of defendant Tim Tisdale that he had 500 pounds of marijuana to sell. The statement was made during the course of the meeting, after the tea set which he brought to the meeting had been unwrapped. The marijuana statement was followed by other references to the sale of the tea set.

Other errors urged are directed to the giving of a "recently stolen" property instruction, the refusal of a motion during trial for a severance, testimony of a statement by defendant Tim Tisdale that when burglarizing a home he had seen a Rembrandt painting but did not steal it, and testimony that he had taken an undercover agent on a tour of Albuquerque to "case" jewelry stores. The tape covered one meeting when the defendants arrived in Albuquerque with the tea set and it was shown to the informer. The meeting was to discuss its sale, and the conversation included

the marijuana reference. Testimony as to other discussions at other places referred to the other illegal acts.

■ In the taped conversation Tim Tisdale suggested to the informer that he show "it" (the tea set) to "him" (the prospective purchaser, an undercover agent). The informer said, "Let me get back with him." Then Tim Tisdale said, "Yeah, I've got 500 pounds of weed too. If you can move that." The "weed" was discussed. Then the conversation returned to the tea set and its purchaser. Again, this was one conversation and one meeting with both defendants present.

The defense advanced to the charges was that it all was an innocent transaction. The taped conversation demonstrated, as did the other conversations, that the defendants were prepared to sell illicit goods and there was no mistake. It demonstrated that the transaction was not an innocent one and it was appropriate that the jury was made aware of all the circumstances. The evidence showed place and intent. The trial court's ruling under Rule 404 of the Federal Rules of Evidence was correct. It is apparent that under Rules 404 and 403 the trial judge had to balance the danger of prejudice against the probative value of the testimony. When all circumstances are considered it was not error to have admitted the reference to marijuana in the tapes nor references to the other acts challenged.

Rule 403 says that the evidence "may be excluded." It may be excluded "if its probative value is substantially outweighed by danger of unfair prejudice." This is, of course, any evidence not just that relating to other incidents. The prejudice must be "unfair."

The trial judge did not admonish the jury as to the limited purpose for which the evidence was admitted and defendants made no request that this be done. The court gave full and complete instructions as to the tape at the conclusion of the trial.

* The Honorable Wesley E. Brown of the United States District Court for the District of Kansas, sitting by designation.

We cannot see that marijuana is so different as an illicit good for sale, from the stolen tea set, the jewelry store tour, the burglary, and the other actions which related to or grew out of the meeting, and demonstrated the circumstances surrounding the meetings. The whole relationship was important for the jury in its evaluation of the innocence of the transaction. We cannot say that mention of marijuana is different or so unusual as to outweigh the probative value of all the circumstances as determined by the trial court.

We have commented before on the changes brought about by Rule 404 of the Federal Rules of Evidence, and noted the change from the starting position of exclusion "unless" to admission "unless." This is a significant change and is important in the examination of cases decided before the change in the Rules. The defendants have not demonstrated that any "unless" element is present to overcome the "admission." The evidence was properly admitted under Rule 404. The standards were discussed starting with *United States v. Nolan*, 551 F.2d 266 (10th Cir.), and need not be repeated here. *See United States v. Lucero*, 601 F.2d 1147 (10th Cir.).

■ The "recently stolen" instruction was given, as mentioned, and the defendants assert that the lapse of time between the date of the theft and the first evidence that the tea set was in their possession was too long to permit the giving of the instruction. This was a period of about sixteen months. We cannot agree because the tea set was unique, it was very unusual, and bore inscriptions showing its age and origin. It was something which could not be disposed of easily or quickly. The defendant Tim Tisdale remarked to the informer, who had indicated that the tea set could be sold: "We basically never had an outlet for this type of stuff before." The tea set was delivered by defendants in a bag which had been stolen from the house at the time the tea set had been taken. We must hold that despite the long interval the particular circumstances made the giving of the instruction proper. During the course of the in-

struction on recently stolen property the court twice reminded the jury that the defendant need not take the stand to explain possession. The court said also:

"You will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

"It is the exclusive province of the Jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits you to draw from possession of recently-stolen property. If any possession the accused may have had of recently-stolen property is consistent with innocence, or if you entertain reasonable doubt of guilt, you must acquit the accused."

■ We find no error in the other points advanced by the defendants including the motion for continuance, for severance, and the urging that there was a conflict by reason of the fact that the one retained attorney represented both brothers. An attorney for each had been appointed. Then an attorney was retained. As to the conflict point we find no conflict shown by the record and no possibility of prejudice or conflict. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), does not lead to a contrary result. *See also Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 and *United States v. Warledo*, 557 F.2d 721 (10th Cir.). The statement of defendants' attorney demonstrates that no issue arose.

■ A further reference must be made to the admission of the tapes into evidence. With the availability of discovery the defendant also assumes an obligation or duty. This duty is to call to the attention of the trial court before trial issues as were here raised at trial as to the tape. It is apparent that much of the tape was admissible beyond question, but that a question did exist as to the marijuana statement. The attorney for defendants had a duty to raise this issue before trial by a pre-trial motion as the rules contemplate. The matter could have then been considered and if necessary

the reference could have been omitted. But this was not done and it became a possible trial error. Long before trial the defendant had moved for discovery and the Government advised the court that Rule 16 material would be furnished. The attorney indicated that he knew what was in the tape as he said as part of his objection: "I have some idea as to what the tape recordings purportedly contain." It should be pointed out that the attorney who tried the case was in the firm but not the attorney who was scheduled to try the case. In instances where it is apparent that an objection has been intentionally saved for trial, or where the trial attorney did not regard it of sufficient importance to raise before trial, we will consider it to have been waived.

AFFIRMED.

HOLLOWAY, Circuit Judge, dissenting:

I respectfully dissent. To me the controlling issue is the admission in evidence of the discussion of the possible sale by defendant Tim Tisdale of 500 pounds of marijuana and the use of marijuana by him. This evidence is said to be admissible under Rule 404(b), F.R.E., to show intent and knowledge that the tea set was stolen property and was presented at trial through tapes and a transcript, Exs. 11, 12, and 13. To me, that part of the tape and transcript was unnecessary for purposes of the prosecution, was of a wholly different sort of conduct, and highly prejudicial. It could easily have been omitted, and refusal to do so calls for a new trial in my judgment.

In the recording which was played to the jury (Ex. 12) Tim Tisdale specifically discussed 500 pounds of the marijuana he was trying to "move"; where it came from; a particular time frame during which the marijuana would or could be available; particular buyers; the competition; a price term and delivery; and he said that he, Tim, had been using marijuana himself. (II R. 167–69). There were specific, timely objections to this evidence on the ground of prejudice. (II R. 65–66, 139–45; see also 82, 102–06).

I would hold that admission of this evidence was prejudicial error. The Government's generalized argument that the whole conversation was "logically linked" to the crimes charged is unpersuasive. (Brief of Appellee, 21). There was one long conversation involved, but that does not establish that the discussion of illicit dealing in marijuana met the test of Rule 404(b) to show motive, opportunity, intent, preparation, plan or knowledge and the like with respect to the tea set transaction. The marijuana matter was not similar to dealing in the stolen tea set as were the other references to stolen jewelry and burglarizing jewelry stores. Thus it was not evidence of unlawful activity of a closely related type as in *United States v. Nolan*, 551 F.2d 266, 271–72 (10th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (evidence of prior importation of hashish into England by similar concealment methods held admissible in prosecution for importation of marijuana into the United States). It injected sensitive evidence of a very different type of offense. Its effect was thus merely the showing of a general criminal character or trait to prove action in conformity therewith, which Rule 404(b), F.R.E., specifically prohibits. *United States v. Mann*, 590 F.2d 361, 368–371 (1st Cir.); *see United States v. Nolan, supra*, 551 F.2d at 271; *United States v. Burkhart*, 458 F.2d 201, 204 (10th Cir.). And although the evidence may all come from one connected report, the prejudicial portion should have been excised. *E. g., Kilarjian v. Horvath*, 379 F.2d 547, 548 (2d Cir.); *see United States v. Lucero*, 601 F.2d 1147, 1149 (10th Cir.).

The rule of special importance here is Rule 403, F.R.E. which provides:

Although relevant, *evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice*, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. (Emphasis added).

The Rule applies with special force here. The evidence objected to showed the contemplation of a large marijuana transaction which would be a felony, and there were repeated references to it, as well as an obscenity referring to the use of marijuana by Tim Tisdale. (II R. 167–69). This evoked the general odium felt toward such transactions, with a potential for prejudicing the jury. *See United States v. Johnson,* 495 F.2d 242, 245 (10th Cir.); *Harless v. Boyle-Midway Div. American Home Products,* 594 F.2d 1051, 1058 (5th Cir.). The repeated references to marijuana were "... precisely the type of highly prejudicial evidence that should be excluded under Federal Rule of Evidence 403." *Harless v. Boyle-Midway Div. American Home Products, supra,* 594 F.2d at 1058; *United States v. Cook,* 538 F.2d 1000, 1003 (3rd Cir.); *and see United States v. Partyka,* 544 F.2d 345, 347 (8th Cir.) (referring to the prejudicial effect of evidence of possession of 500 pounds of marijuana). Significantly, the jurors showed special concern about the contents of the transcript of the tape recording which contained the references to marijuana transactions, *inter alia.*[1]

There was a statement in the instructions that the tape of the communication "has been admitted into evidence for the sole purpose, as it might be probative in your minds, of establishing motive, intent or knowledge on the part of the defendants as to the acts alleged in the indictment. It is not to be considered for any other purpose." (II R. 254–55). Nevertheless the damaging discussion remained in evidence as heard by the jury. Despite the instruction, the danger of prejudice was too great and the admission of the prejudicial discussion of marijuana should be held erroneous. *See*

United States v. Cook, supra, 538 F.2d at 1002, 1004–05; *United States v. Puco,* 453 F.2d 539, 542 (2d Cir.).[2] The Government's case rested considerably on inferences and circumstantial evidence, particularly as to the crucial element in both counts of knowledge that the tea set was stolen property. Because of the potential for prejudice from the repeated references to the marijuana dealings, such evidence of uncharged wrongs should have been excised. *See United States v. Lucero,* 601 F.2d 1147, 1149 (10th Cir.).

Moreover, I cannot agree with the majority that the enactment of the Federal Rules of Evidence, particularly Rule 404(b), made a significant change in the law. In *United States v. Thomas,* 632 F.2d 837, 845 (10th Cir. 1980), *cert. denied sub nom. Harris v. United States,* —— U.S. ——, 101 S.Ct. 373, 66 L.Ed.2d 227, we said in discussing Rule 404(b) that "[t]he similar offense rule and its ramifications have not been changed remarkably as a consequence of the adoption of the Rules of Evidence." This view is supported by the legislative history. *See, e. g.,* 2 *Weinstein's Evidence,* 404–4 and 404–5 (1980); 22 C. Wright and K. Graham, *Federal Practice and Procedure,* § 5239 at 439 (1978).

Lastly, I cannot agree that there was any waiver of the objection to the prejudicial material on the tapes. Some time before the introduction of the material there was an objection and discussion of the problem during the trial by counsel for the Government and for defendants before the judge. (II R. 65–66). In fact, the trial judge acknowledged that "I have a problem with the marihuana. As far as the rest of it is concerned, I don't have a problem. The

---

1. The jurors sent a note to the trial judge requesting a copy of the indictment, the instructions and the transcript of the tape recording. The judge replied by a note that he was sending in the indictment and instructions but that they should rely on their memories for the contents of the tape or the transcript. (I R. 82).

2. For cases reversing because of the ineffectiveness of a curative instruction *see United States v. Warledo,* 557 F.2d 721, 724–26 and n.1 (10th Cir.); *Government of Virgin Islands v.*

*Toto,* 529 F.2d 278, 282–84 (3d Cir.) (unless the appellate court believes it "highly probable" that the error did not affect the judgment, it should reverse); *De Jong v. United States,* 381 F.2d 725 (9th Cir.); *United States v. Nemeth,* 430 F.2d 704, 705 (6th Cir.). In this connection the jurors' particular concern with the tape recording, already mentioned, becomes extremely important. Because of this concern it is difficult to say with assurance that the prejudicial matters did not harm these defendants.

marijuana is not a related type of item." (II R. 66). At that point, Government counsel indicated he could "work around" the problem. Later the objection was overruled and that portion of the tape was played.

It is true that Government counsel complained that the material had been furnished, that nothing had been done earlier by defense counsel about the objectionable parts, and that the trial judge also said it could have been taken care of at other times. (*Id.* at 142–44). Nevertheless, the objection had been plainly made and excising the objectionable part of the tape and transcript, which troubled the court, was not a difficult problem. (II R. 167–69). There was no evidentiary matter requiring a motion to suppress illegally obtained evidence before trial under Rule 12(b)(3) and Rule 41(f), F.R.Crim.P. This was simply an objection that the material was prejudicial, irrelevant and immaterial under the evidence rules and counsel made a clear, timely objection.

For these reasons I would grant a new trial.