**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ERIC CONDRIN,

Defendant-Appellant.

No. 06-2025

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-05-1560-RB)**

---

Submitted on the briefs:[*]

James N. Langell, Assistant Federal Public Defender, Las Cruces, New Mexico, for Defendant-Appellant.

Terri J. Abernathy, Assistant United States Attorney, Las Cruces, New Mexico, for Plaintiff-Appellee.

---

Before **O'BRIEN**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

[*] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

A jury convicted Eric Condrin of conspiracy to transport illegal aliens and two counts of transporting illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(I). Condrin contends on appeal that (1) the district court abused its discretion at trial by admitting a border patrol photograph taken at his arrest, and (2) insufficient evidence existed to support his convictions.

We disagree and AFFIRM.

## I. Background

Early in the morning on April 18, 2005, the United States Border Patrol pulled over a minivan on New Mexico Highway 11. Eric Condrin sat in the vehicle with six undocumented Mexican citizens and the van's driver, Elias Campos. Condrin was charged with one count of conspiracy to transport illegal aliens and two counts of transporting illegal aliens. Condrin was first tried to a jury in September, 2005. The jury could not reach a verdict and the district court declared a mistrial. Condrin was retried in November, 2005.

At the second trial, the government introduced testimony from two of the minivan's occupants. They testified to Condrin's involvement in the illegal transport operation. One witness repeatedly referred to Condrin as the "bald man" during testimony. Trial Tr. at 125-26, 128, 140-41, 143, 148. This witness testified that the bald man and a woman visited him and the other undocumented aliens at their temporary El Paso, Texas apartments. The bald man instructed the

aliens to "get ready" to leave as transportation north was finally available. The witness also testified that the bald man gave him instructions on how to answer Border Patrol agents if the van was pulled over during transit.

Condrin's head was shaved at the time of arrest. But by trial Condrin had grown a full head of hair. In response, the government proffered a photograph taken of Condrin at the Border Patrol processing facility the night of the arrest to explain the witness's references to Condrin as bald. The defense objected, characterizing the photograph as a "mug shot" and claiming it would inflame the jury. To keep the photograph out of evidence, the defense offered to stipulate that Condrin was in the minivan, arguing identification was not an issue. The district court admitted the photograph over the defense's objection, concluding it (1) was not identifiable as a "mug shot" and, (2) assisted the jury by illustrating the difference in Condrin's appearance between the time of the crime and trial.

The defense argued that Condrin was in the van merely for a ride to Albuquerque. Condrin presented testimony that the minivan driver was doing him a favor by allowing him a ride to Albuquerque to take care of errands that Condrin could not otherwise complete because his wife's car was broken down and the Condrins could not afford a bus ticket. Condrin told a Department of

Homeland Security officer that he had been asleep most of the trip and did not awake until the minivan stopped along the highway to pick up the aliens.[1]

The second jury convicted Condrin on all counts and he was sentenced to concurrent sentences of thirty months in prison, followed by three years of supervised release.

## II. Discussion

Condrin argues two issues on appeal: (1) the admission of the Border Patrol processing photograph taken the night of his arrest, and (2) the sufficiency of the evidence underlying his convictions.

### A. *The Border Patrol Arrest Photograph*

Condrin argues the district court abused its discretion by allowing the Border Patrol photograph taken the night of his arrest into evidence. He argues the admission violated Federal Rules of Evidence 401, 403, and 404(b) because the photograph was irrelevant, prejudicial, and indicative of a prior criminal record. In addition, he contends the photograph was unnecessary for identification purposes since he was willing to stipulate to his presence in the minivan on the night of his arrest.

---

[1] Testimony at trial contradicted Condrin's statement that the aliens were picked up along the highway. Both testifying aliens said they were picked up at an apartment complex, with one alien identifying Condrin as the man sent to retrieve him from the apartment.

*1. Federal Rules of Evidence 401 and 403*

At trial, Condrin's counsel objected to the photograph's admission into evidence, calling it both prejudicial and irrelevant. The district court found the photograph neither and allowed it in for identification purposes. We review the district court's evidentiary ruling for an abuse of discretion. *See United States v. Ramirez*, 63 F.3d 937, 942 (10th Cir. 1995).

Under Federal Rule of Evidence 401, evidence is relevant if it tends to make a material fact "more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The defense claims the photograph was irrelevant, because of its offer to stipulate to Condrin's presence in the van. We disagree.

Condrin was nearly bald at the time of his arrest. By trial, four months later, he had grown a full head of hair. The photograph helped explain the discrepancy between Condrin's full head of hair and witness testimony identifying him as the "bald man," thereby bolstering the credibility of the witnesses who had met Condrin at their apartment and in the minivan. The defense stipulation did not solve the problem of clarifying that Condrin was the "bald man" in question. For instance, one witness offered a critical piece of testimony when he explained that the "bald man" came to the apartment to tell him that it was time to leave and then gave him instructions on how to answer the Border Patrol. The defense did not offer to stipulate that Condrin was the "bald man" for the purposes of these

alleged acts. In fact, Condrin's contentions to the Department of Homeland Security that he was sleeping until the aliens entered the minivan is in direct contention with the witness's testimony. The photograph clarified that testimony and explained the witness was referring to Condrin.[2]

Given our finding the photograph was relevant under Rule 401, the next question is whether the probative value of the photograph was substantially outweighed by its prejudicial value under Fed. R. Evid. 403. Condrin argues prejudice outweighed probity here because the photograph suggested he had a prior arrest.

Condrin points first to a case from the Eleventh Circuit. In *United States v. Hines*, 955 F.2d 1449, 1456–57 (11th Cir. 1992), the court reversed a conviction where the trial court admitted two photographic spreads from which the victim of a sexual assault had identified her assailants. Specifically, the court concluded the photographs implied prior criminal behavior by the defendants and were especially prejudicial since they were mug shots taken after the commission of other crimes. In the photographs, the men—including the defendant—were holding police identification boards and wearing prison garb. Testimony at trial

---

[2] In any event, the proffered exhibit need not go to a fact in dispute to be admissible. Background evidence "is universally offered and admitted as an aid to understanding." Fed. R. Evid. 401, advisory committee's note.

also suggested the photo spreads were of "known criminals and convicts." *Id.* at 1456.

Condrin also points to an unpublished case from this circuit supporting his argument. In *United States v. Romero-Rojo*, 67 F.App'x. 570 (10th Cir. 2003), we reviewed a district court decision admitting a mug shot from the defendant's Alien Registration File. The photograph showed the defendant wearing a placard that read "California State Prison." Although we found any error in admitting the photograph as harmless, we noted in dicta that the photograph "needed to be particularly probative" for its admission to have been proper given the highly prejudicial nature of the placard. *Id.* at 572.

In contrast to the photographs in those cases, the Border Patrol photograph entered into evidence here carried none of the prejudicial markers so important to those decisions. The photograph did not contain any incriminating information suggesting it was a mug shot. Condrin was wearing street clothes. No testimony was offered that the photograph arose from an arrest. Moreover, unlike those cases, the district court concluded the photographs helped remedy a risk of confusion.

Still, Condrin argues the photograph's style provides the indicia of criminal activity, because it looks like a mug shot. The district court did not agree with Condrin's assessment. It found no markers on the photograph identifying it as a

mug shot, and the photograph was neither unflattering nor inflammatory. Furthermore, the photograph was taken in conjunction with the arrest for the charges brought in this case. Any testimony to that effect could easily have remedied potential prejudice as a jury would hardly be surprised that the person facing charges before them was first arrested and booked on those charges. It would have taken no effort on the part of the defense to bring out such facts.

In conclusion, the district court did not abuse its discretion in determining the photograph's probative value outweighed any prejudice by clarifying the witness references to the "bald man" identified as Condrin.

## 2. *Federal Rule of Evidence 404(b)*

The parties disagree whether our review of Condrin's claim that the district judge violated Federal Rule of Evidence 404(b) should be for abuse of discretion or for plain error. The government argues Condrin made no Rule 404(b) objection at trial and we should review for plain error. *United States v. Herndon*, 982 F.2d 1411, 1414–15 (10th Cir. 1992). Condrin contends, however, his objection to the admission of the photograph at trial encompassed Rule 404(b) because it disclosed a prior arrest, and we should judge its admissibility under an abuse of discretion standard as we did in *United States v. Roberts*, 88 F.3d 872, 879 (10th Cir. 1996).

Under the Federal Rules of Evidence, an objection must state the specific ground of the objection "if the specific ground was not apparent from the context." Fed. R. Evid. 103. Condrin suggests his counsel's reference to the photograph as a "mug shot" during his objections about the prejudicial and irrelevant nature of the photograph made it clear that he was objecting to the photograph under Rule 404(b)'s exclusion of evidence of "other crimes, wrongs, or acts." Fed. R. Evid. 404(b).

Whatever the standard of review, the district court did not err. Federal Rule of Evidence 404(b) excludes evidence of "other" crimes, wrongs, or acts, not evidence from the crime in question. We agree with the court in *United States v. Mohammed*, 27 F.3d 815, 822 (2d Cir. 1994), which concluded that photographs taken during defendant's arrest for case in chief do not improperly expose the jury to defendant's criminal record under 404(b). In this case, the photograph was taken by the Border Patrol on the night of Condrin's arrest for this crime. Moreover, no testimony links the photograph to Condrin's arrest, nor is there any indication the jury took it as evidence of a prior crime. Even if the photograph did suggest an arrest, it arose from his arrest in this case, not from *other* crimes or bad acts, and any prejudice could have been remedied by a jury instruction.

In short, the district court neither abused its discretion nor committed plain error in admitting the photograph.

*B. Sufficiency of Evidence*

We review sufficiency of evidence *de novo.* *United States v. Voss*, 82 F.3d 1521, 1524–25 (10th Cir. 1996). In so doing, we "view[] the evidence in the light most favorable to the government" asking whether "any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001). The discretion to resolve conflicting testimony, weigh the evidence, and draw inferences from basic facts to ultimate facts lies with the jury. *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998).

*1. Two Counts of Transporting Illegal Aliens*

To support the two counts against Condrin regarding transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), the government relied upon an aiding and abetting theory, which required proof Condrin "willfully associated with a criminal venture and sought through some affirmative action to make that venture succeed." *United States v. Barajas-Diaz*, 313 F.3d 1242, 1249 (10th Cir. 2002). The criminal venture of transporting illegal aliens rests upon proof by the government of:

> (1) the transporting or moving of an alien within the United States, (2) that the alien was present in violation of law, (3) that the defendant was aware of the alien's status, and (4) that the defendant acted willfully in furtherance of the alien's violation of the law.

*United States v. Barajas-Chavez*, 162 F.3d 1285, 1287 (10th Cir. 1999).

Condrin argues the evidence shows neither (1) that he was aware of the aliens' status, nor (2) that he acted willfully in violation of the law to help make the criminal venture succeed. He contends he was merely present during the minivan driver's commission of the crime and "mere presence" is insufficient to prove aiding and abetting. *United States v. Taylor*, 612 F.2d 1272, 1275 (10th Cir. 1980). We disagree.

The facts presented at trial support the jury's verdict. As an initial matter, Condrin concedes he was present at the scene of the arrest. And he also concedes the government presented testimony showing he entered the El Paso, Texas apartment to notify the aliens of their imminent departure. The testimony suggests Condrin instructed the aliens how to respond if they were stopped by the Border Patrol, a fact consistent with his knowledge of the aliens' status and the illegal transportation scheme. Finally, his explanation to the Border Patrol officers about the purpose of his trip was inconsistent with his wife's testimony.

Condrin argues this accumulation of evidence is insufficient to infer knowledge the aliens were illegally in the United States or that he took steps to help transport them in violation of the law. The jury disagreed with this view, and we defer to them. The evidence offered by the prosecution provided ample

support for the jury's conclusion that Condrin was aiding and abetting a criminal venture to transport aliens within the United States.[3]

*2. Conspiracy to Transport Illegal Aliens*

The conspiracy count against Condrin required proof of (1) an agreement between two or more persons to break the law, (2) an overt act in furtherance of the conspiracy, and (3) defendant's wilful action to join the conspiracy. *United States v. Summers*, 414 F.3d 1287, 1295 (10th Cir. 2005). "The defendant's participation in . . . the conspiracy need only be slight, so long as sufficient evidence exists to establish the defendant's participation beyond a reasonable doubt." *United States v. Johnston*, 146 F.3d 785, 789 (10th Cir. 1998). Based on the facts discussed above, there was sufficient evidence for a rational trier of fact to infer that Condrin was a knowing and active participant in a conspiracy with Campos to transport illegal aliens within the United States.

### III. Conclusion

For the foregoing reasons, we find the district court did not abuse its discretion in admitting the photograph of Condrin taken by the Border Patrol and sufficient evidence existed for the jury to convict Condrin on all counts. We AFFIRM.

---

[3] In its reply brief, the defense highlights reasons to question the testimony of one of the alien witnesses. But it is not our position to question the credibility of the witness; that task lay with the jury.