**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CLAUD REDDEN,

       Petitioner-Appellant,

v.

SAM CALBONE, Warden,

       Respondent-Appellee.

No. 07-7001

(D.C. No. CIV-03-679-RAW)
(E. D. Oklahoma)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE, EBEL,** and **McCONNELL**, Circuit Judges.

Claud Redden, an Oklahoma prisoner appearing pro se, seeks a certificate of
appealability (COA) in order to challenge the district court's denial of his 28 U.S.C. §
2254 habeas petition. The district court rejected his claims that the Oklahoma Court of
Criminal Appeals erred in finding that sufficient evidence supported his state court
conviction for first degree murder and that his state appellate counsel was not
constitutionally ineffective. Because reasonable jurists would not find the district court's
assessment of Redden's constitutional claims debatable or wrong, we deny his request
and dismiss the matter.

---

[*] This order is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel.

I.

On January 6, 1996, Charles Pack died from a gunshot wound in front of his house in Cherokee County, Oklahoma. Redden was arrested within hours for Pack's murder and was eventually charged in Oklahoma state court with first degree murder. After Redden's first trial ended in a hung jury, the jury in his second trial convicted him of first degree murder and recommended a sentence of life imprisonment with the possibility of parole. At sentencing, the state district court imposed the jury's recommended sentence.

After the Oklahoma Court of Criminal Appeals (OCCA) affirmed Redden's conviction and sentence on direct appeal and affirmed the state district court's denial of Redden's motion for post-conviction relief, Redden filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court claiming (1) that there was insufficient evidence to sustain his conviction and (2) that his counsel on appeal was ineffective. Adopting the magistrate judge's report and recommendation, the federal district court rejected Redden's claims and dismissed his petition.

II.

Redden appeals the dismissal of his § 2254 habeas petition and requests that we grant him a COA. When a federal district court denies a state prisoner's § 2254 habeas petition, the prisoner must obtain a COA to appeal the denial. Davis v. Roberts, 425 F.3d 830, 833 (10th Cir. 2005). To obtain a COA, the prisoner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right means "that reasonable jurists would find

-2-

the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Redden's petition claims that there was insufficient evidence produced at trial to convict him of first degree murder and that his appellate counsel was ineffective. When a habeas petitioner's claims have, as here, been adjudicated on the merits in state court proceedings, the petition can only be granted if the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[] or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).[1]

## A. *Insufficiency of the Evidence*

Redden challenges the OCCA's determination on direct appeal that the prosecution

---

[1] Redden argues that a de novo standard, rather than § 2254(d)'s deferential standard, applies to his petition because the OCCA "did not provide any reason for their determination of the facts, and did not provide a rational decision that a higher court can review . . . ." Aplt. Opening Br. at 22. We have held that § 2254(d)'s deferential standard does not apply "[w]hen the state courts have not addressed the merits of a specific constitutional claim . . . ." Le v. Mullin, 311 F.3d 1002, 1010 (10th Cir. 2002) (per curiam) (citing Romano v. Gibson, 278 F.3d 1145, 1150 (10th Cir. 2002)). Here, the OCCA addressed all of Redden's constitutional claims, which is sufficient to trigger § 2254(d)'s deferential standard because the claims have been adjudicated even if in a summary fashion. Id. at 1011 n.2 ("If, in the context of a summary disposition, a state court gives any indication that it addressed all of a petitioner's federal constitutional claims – even if the state court says nothing about the specifics of the petitioner's arguments, fails to reference federal case law supporting the decision, and remains silent as to the reasoning forming the basis of its resolution – this court applies AEDPA's deferential standard of review.").

had produced sufficient evidence to prove beyond a reasonable doubt that Redden shot Pack and that he killed Pack with malice aforethought. In Oklahoma, "[a] person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being." OKLA. STAT. ANN. TIT. 21, § 701.7(A). "Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." Id. "When reviewing the sufficiency of the evidence on a habeas corpus petition, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (internal quotation marks omitted). When the record supports conflicting inferences, we must presume that the jury resolved those inferences in the government's favor. Id. (citing Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)). "Sufficiency of the evidence is a mixed question of law and fact" requiring the application of the standards in § 2254(d)(1) and (2). Maynard v. Boone, 468 F.3d 665, 673 (10th Cir. 2006), cert. denied, 2007 U.S. LEXIS 3115 (2007).

A COA is not warranted on Redden's sufficiency of the evidence claim because no reasonable jurist could conclude that the OCCA's decision on direct appeal affirming Redden's conviction and sentence was contrary to or unreasonably applied clearly established Federal law, or was based on an unreasonable determination of the facts in

light of the evidence presented at trial. As the magistrate judge's report and recommendation explained, the government's evidence linked Redden to the shooting. Pack's wife saw Redden's red truck pull into their driveway before Pack was shot and she saw it pull out of their driveway after Pack was shot. Report and Recommendation at 2-3. Within an hour of the murder, a local store clerk and Pack's mother both saw Redden driving his red truck within a few miles of the murder scene. Id. at 3-4, 8. A bone fragment found in the bed of Redden's red truck and blood found on the side of the red truck were consistent with Pack's DNA. Id. at 5.

Further, the evidence demonstrated that Redden acted with the requisite malice aforethought. At some point before the murder, Melvin Pack, the victim's father, had purchased some hay from a man named Don Perry and gave Redden $45 to compensate Perry for the hay. Id. at 6. The night before the murder, Melvin learned from Redden that Redden had not given Perry the money. Id. Melvin told Redden that Melvin would "take it out of [Redden's] hide" if Redden did not give Perry the $45 before noon the following day. Id. Afterward, Redden was overheard saying that he would "whip [Melvin's] ass, but [he] would have to whip the whole damned bunch," id., and that "if [Redden] got into it with Melvin that he would have to take it up with his son, too," ROA, Vol. III, at 587. This evidence supported that Redden had formed a desire to attack members of the Pack family, including the victim, before the shooting.

Redden argues that evidence that he produced at trial tended to show his innocence, including testimony from his wife that they were together at the time of the

shooting and testimony that neither Melvin nor Redden were angry over the disputed amount of money. It is, however, within the jury's province to resolve conflicting evidence and we must presume, after a conviction, that the jury resolved whatever evidentiary conflicts may exist in favor of the government. United States v. Condrin, 473 F.3d 1283, 1287 (10th Cir. 2007) (citing United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998)); Turrentine, 390 F.3d at 1197. Although he contends that the government's evidence fails to exclude "every reasonable hypothesis," Aplt. Opening Br. at 16, we have explained that "[t]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt," United States v. Wilson, 182 F.3d 737, 742 (10th Cir. 1999) (citation and internal quotation marks omitted).

### B. *Ineffective Assistance of Counsel*

Redden argues that his *appellate* counsel was ineffective for failing to argue on direct appeal that his *trial* counsel was ineffective. To prevail on his ineffective assistance of appellate counsel claim, Redden must show "both (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding – in this case the appeal – would have been different." Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citation omitted). When a habeas petitioner claims that his appellate counsel was ineffective because of failure to raise an issue on appeal,

-6-

we look to the merits of the omitted issue generally in relation to the other arguments counsel did pursue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Id. (citations and internal quotation marks omitted).

Reasonable jurists would not dispute that the district court was correct that the OCCA's rejection of Redden's ineffective assistance of counsel claim was not contrary to, or involved an unreasonable application of, clearly established Federal law. None of Redden's arguments show that his trial counsel was ineffective. As a result, his appellate counsel was not ineffective for failing to raise them on appeal.

First, Redden argues that his trial counsel labored under a conflict of interest because she was the daughter of the then-Cherokee County District Attorney. Although Redden's trial counsel and the district attorney were related, he has not shown that the relationship resulted in a division of loyalties adversely affecting the trial counsel's performance. See Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002) ("And we have used 'conflict of interest' to mean a division of loyalties that affected counsel's performance.") (emphasis omitted). Indeed, Redden's trial counsel repeatedly attacked the government's handling of the physical evidence, eliciting testimony that the government had left key evidence unattended for long periods of time and failed to refrigerate potentially

perishable physical evidence, such as blood.  See, e.g., ROA, Vol. III, at 319-20, 350-51, 366, 450, 482-83, 574; ROA, Vol. IV, at 668-69, 671, 849.  Further, Redden's trial counsel asserted during closing arguments that the police had failed to preserve the crime scene.  ROA, Vol. IV, at 891-92.  For the same reasons that trial counsel's performance was not adversely affected by her familial relationship, the record gives us no basis for concluding that there is a reasonable probability that, but for the trial counsel's familial relationship with the district attorney, Redden would have been acquitted.

Second, Redden argues that his trial counsel should have filed a motion to suppress the physical evidence that the police collected, namely the bone and blood evidence found on Redden's truck, because the evidence was illegally seized and possibly tainted. Redden offers no reason, however, why the police could not seize the evidence, for it was within their plain view when they arrested him in front of his house next to the truck. United States v. Castorena-Jaime, 285 F.3d 916, 924 (10th Cir. 2002) (citing Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971)).  Further, flaws in the chain of custody that might have resulted from the police's handling of the evidence, such as contamination, "go to the weight of the evidence, but will not preclude admissibility" if the government lays a proper foundation for the evidence at trial, as it did in Redden's case.  United States v. Washington, 11 F.3d 1510, 1514 (10th Cir. 1993).

Third, Redden argues that his trial counsel was ineffective for failing to request a pre-trial competency evaluation.  "It is well-settled that the criminal trial of an incompetent defendant violates due process."  McGregor v. Gibson, 248 F.3d 946, 951

(10th Cir. 2001) (en banc) (quoting <u>Medina v. California</u>, 505 U.S. 437, 453 (1992)) (internal quotation marks omitted). He points to no facts, however, that suggest that he lacked "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" or "'a rational as well as factual understanding of the proceedings against him'" such that he lacked competency to stand trial. <u>Id.</u> at 952 (quoting <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960)).

Fourth, Redden contends that his trial counsel was ineffective because she did not request an instruction allowing the jury to find him guilty of the lesser-included offense of first degree manslaughter.[2] Oklahoma's first degree manslaughter statute provides:

Homicide is manslaughter in the first degree in the following cases:

1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.

OKLA. STAT. ANN. TIT. 21, § 711. In Oklahoma, "all lesser forms of homicide are necessarily included and instructions on lesser forms of homicide should be administered if they are supported by the evidence." <u>Shrum v. State</u>, 991 P.2d 1032, 1036 (Okla. Crim.

---

[2] At one point, Redden argues that the state trial court was required to instruct the jury on all lesser-included offenses. Neither this court nor the Supreme Court has recognized a constitutional right to a lesser-included offense instruction in a non-capital case, such as this one. <u>Dockins v. Hines</u>, 374 F.3d 935, 938 (10th Cir. 2004).

App. 1999). The failure of Redden's trial counsel to request a first degree manslaughter instruction was neither objectively unreasonable nor prejudicial to Redden under the first and second prongs, respectively, of the ineffective assistance of counsel test because he introduced no evidence at trial supporting a first degree manslaughter instruction. There was no evidence that, when he killed Pack, Redden was committing a misdemeanor, acted in the heat of passion, or was resisting an attempt by Pack to commit a crime or after such an attempt failed. Indeed, the only evidence at trial showed that the crime took place the day *after* an argument between Redden and Pack's father.

Finally, Redden also states without elaboration that his trial and appellate attorneys failed to point out during closing arguments and on appeal that he had an alibi witness (his wife), that Pack was not present during the argument between Redden and Melvin over the money, that "anyone" could have driven his truck because it did not take a key to start the truck, and that he had a good reputation in the community and no criminal record. Aplt. Opening Br. at 25-26. As to the purported failure to mention the alibi testimony during closing argument, Redden's counsel argued to the jury that Redden's chronology of events was consistent with his wife's testimony. ROA, Vol. V, at 899-900. Redden fails to explain why the fact that Pack was not present during the argument over the disputed $45 the night before the murder tends to show his innocence. Even if Redden is correct that his truck could have been driven by any person happening to pass by it on the day of the murder, there is not a reasonable probability that such evidence would have altered the result in this case, given the eyewitness testimony placing him in

-10-

the truck in the hours before and the hour after the murder.  Similarly, it is unlikely that whatever good reputation Redden had would have overcome the wealth of evidence placing him at the scene of the murder with a motive to kill the victim.

III.

Because Redden has not made a substantial showing of the denial of a constitutional right on either his insufficiency of the evidence or ineffective assistance of appellate counsel claims, we DENY Redden's request for a COA and DISMISS this matter.

Entered for the Court


Mary Beck Briscoe
Circuit Judge